# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **MAURICE KENNEY,** et al., | Case No. 1:22-CV-295 |
| Plaintiffs, | Judge Michael R. Barrett |
| vs. | Magistrate Judge Karen Litkovitz |
| **CITY OF CINCINNATI,** et al., | |
| Defendants. | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, CERTIFICATION OF CLASS AND APPOINTMENT OF CLASS COUNSEL FOR SETTLEMENT PURPOSES, APPROVAL OF PROPOSED CLASS NOTICE AND ADMINISTRATION PROCESS, AND APPOINTMENT OF CLAIMS ADMINISTRATOR**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs, individually and on behalf of those similarly situated, and Defendants jointly request that this Court preliminarily certify a settlement class, preliminarily approve the attached Settlement Agreement (Exhibit 1 to this Motion), and approve the attached class notice (Exhibit C to the Settlement Agreement). The proposed settlement class is comprised of a group of persons identified by counsel for Plaintiffs and Defendants through a mutual review of police and prosecution-related records, each of whom was subjected to arrest and prosecution during the 2020 protests and curfew in Cincinnati, Ohio that are at issue in this litigation. The members of the proposed settlement class are listed on Exhibit A to the Settlement Agreement.

A prompt ruling on this request for preliminary approval will allow immediate notice to be sent to the class and a fairness hearing to be set which will expedite a final resolution of this matter.

1

The Parties request that the Court approve a schedule in which notice to putative class members will be sent no later than February 6, 2026 and a deadline for objections or to opt out of the class be set on April 3, 2026.  A fairness hearing is requested on or about May 7, 2026 at 11:00 AM at the Potter Stewart Courthouse, 100 East Fifth St., Cincinnati Ohio 45202.  The grounds for this Motion are set forth in the accompanying memorandum.

**MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

After over two years of negotiations, the Named Plaintiffs[1], individually and on behalf of the class they seek to represent (collectively "Plaintiffs"), the City of Cincinnati, the individual City Defendants, Hamilton County, and the individual County Defendants (collectively "Defendants") have reached a settlement agreement in this class action. The settlement will compensate the approximately 479 people who, between May 30, 2020 and June 8, 2020, were arrested, detained, and charged with misdemeanors, and had those charges dismissed, in connection with protests following the murder of George Floyd and the imposition of a citywide curfew in the City of Cincinnati. Specifically, Defendants City of Cincinnati and Hamilton County will jointly make payments for the creation of a Class Settlement Fund and Account ("CSFA"), from which payments will be made: (1) to every eligible settlement class member; (2) to every member of a defined subclass of eligible persons who meet specific criteria; (3) to each Named Plaintiff; (4) for the creation of a fund to which every eligible settlement class member may also apply for uncompensated injuries; (5) for attorney's fees and expenses incurred in the

---

[1] The Named Plaintiffs are: Maurice Kenney, Quinn Moore, Wilder Silas Zeiser (f/k/a Mary Zeiser), Paula Bennett, Arianna Hicks, Suann Lockard, Kimberly Calloway, Andrew Amrein, Zoe Keller, the Estate of Chase Butler, deceased, and the Estate of Paulina Prokhorova, deceased.

representation of the Plaintiffs; and (6) for the cost of administration of the settlement by a third party administrator.

Because this proposed settlement satisfies all of the criteria for preliminary approval, the Parties jointly request that the Court: (1) preliminarily approve the proposed settlement terms as reflected in the Parties' Settlement Agreement ("Settlement Agreement"); (2) conditionally certify the proposed class for settlement purposes pursuant to Rules 23(c) and 23(e); (3) appoint Santen & Hughes, LPA and Friedman Gilbert + Gerhardstein (collectively, "Plaintiffs' Counsel") as Class Counsel; (4) approve the proposed class settlement notice procedure as reflected in the Settlement Agreement; (5) approve the proposed procedure for administration of the Class Settlement Fund and Account ("CSFA"); and (6) approve the appointment of Rust Consultants, Inc. as the proposed Claims Administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Class Claims

Nearly 500 people were arrested, detained, and prosecuted in Cincinnati between May 30 and June 8, 2020, when the City's curfew was in effect. Of those people, hundreds were arrested and transported by the City, then detained by the City and/or on County property and/or in the Hamilton County Justice Center's sallyport. Plaintiffs' Complaint alleges constitutional claims associated with those events.

In this class action, Plaintiffs allege in their Complaint (Doc. 1) that the City Defendants imposed and enforced an unlawful citywide curfew in violation of Plaintiffs' First Amendment rights of speech and assembly, in retaliation for their protected speech or expression, and in violation of their rights to due process and equal protection. Plaintiffs' Complaint further alleges that the City Defendants subjected subclasses of those persons to (a) unlawful excessive force, (b)

unlawful arrest and prosecution; and (c) unlawful seizure of property, in violation of the Plaintiffs' constitutional rights, and that the City and County Defendants subjected arrestees to inhumane conditions of confinement. (The claims of settlement class members are referred to collectively in this brief as "the Class Claims"). Plaintiffs' Complaint seeks both money damages and injunctive relief.

In Defendants' Answers, they deny Plaintiffs' allegations and all liability. (*See* City Defendants' Answer, Doc. 27; County Defendants' Answer, Doc. 28).

**B. Investigation, Informal Discovery, and Settlement Negotiations**

The Complaint was filed in May 2022. Prior to filing the Complaint, Plaintiffs' Counsel conducted a substantial investigation, assembling and reviewing voluminous photographic and video evidence of the events that took place during the protests and Curfew, identifying numerous potential class members and individual defendants, and analyzing substantial documentary evidence associated with City and County officials' and officers' roles and the underlying facts of the arrests, prosecutions, and detentions at issue here.

Shortly after the filing of the Complaint, Plaintiffs' counsel and counsel for the Defendants agreed to engage in informal settlement discussions, which led to formal mediation on May 30, 2023 with Magistrate Judge Stephanie Bowman as mediator. The mediation was continued over multiple sessions, and ultimately concluded unsuccessfully. Afterward, the Parties continued to engage in settlement discussions directly while they simultaneously prepared the case to move into the discovery phase of litigation.

Throughout these informal and formal settlement discussions, the Parties agreed to postpone formal discovery, but nonetheless engaged in voluntary disclosure of evidence and information assembled through various separate investigations by Plaintiffs' counsel and

4

Defendants' counsel. As a result, the Parties identified the proposed Settlement Class which is comprised of 479 persons who were arrested and subjected to the constitutional violations summarized above. The Parties also identified the proposed Conditions of Confinement Subclass, consisting of proposed Settlement Class Members who were detained in excess of five (5) hours.

The Parties have compared the claims and injuries of the Settlement Class Members as set forth in the Complaint and the defenses available to Defendants to similar civil rights cases that have been litigated and/or settled in other jurisdictions under comparable circumstances during the same national protests.

Defendants deny liability and assert defenses to Plaintiffs' claims. The Parties nonetheless acknowledge that proceeding with litigation, with claims decided by the Court, presents risk. Therefore, the Parties reached agreement on key terms of the proposed settlement. Those terms were approved by Cincinnati City Council on December 10, 2025 and the agreement was executed by all Parties.

## III.    SUMMARY OF PRINCIPAL SETTLEMENT TERMS

The Settlement Agreement will provide significant compensation to the approximately 479 persons who were subjected to arrest and prosecution in Cincinnati and Hamilton County in association with the May and June 2020 protests relating to the murder of George Floyd. In addition, the Settlement Agreement provides for the City's significant updates to policies, procedures, and training for its police in relation to mass protests and mass arrests.

### A.  Proposed Class Definitions

1. <u>Settlement Class</u>

The proposed Settlement Class is comprised of a group of persons identified by counsel for Plaintiffs and Defendants through a mutual review of police and prosecution-related records,

each of whom were subjected to arrest and prosecution during the 2020 protests and curfew in Cincinnati, Ohio as alleged in the Complaint. The existence of arrest records, court records, and prosecution and defense records made it possible for counsel for the Parties to reliably establish the identities of persons meeting the criteria for this class, and accordingly, the members of the proposed Settlement Class are listed on the attached Exhibit A to the Settlement Agreement, which are attached together as Exhibit 1 to this Motion.

2.  Conditions of Confinement Subclass

In addition to the primary Settlement Class, the Settlement Agreement provides for a "Conditions of Confinement Subclass," which is comprised of a group of persons who were detained for more than five (5) hours in association with their arrests. Proof will be required in order for a Settlement Class Member to establish membership. The process for establishing membership in the Conditions of Confinement Subclass is described in the Settlement Agreement (attached as Exhibit 1 to this Motion) and the Claim Package (included in Exhibit 1 here as Exhibits C-F to the Settlement Agreement).

3.  Uncompensated Injury

Settlement Class Members including Conditions of Confinement Subclass members may also make additional claims for uncompensated injury, to compensate individuals for harms that counsel uncovered during the investigation. For example, some Settlement Class Members had their property damaged or had to obtain compensable medical treatment for their injuries. Proof will be required. The process for submitting such a Secondary Claim is described in the Settlement Agreement (attached as Exhibit 1 to this Motion) and the Claim Package (included in Exhibit 1 here as Exhibits C-F to the Settlement Agreement).

6

### B. Establishment of Qualified Settlement Fund

The City and County shall collectively pay the total amount of Eight Million One Hundred and Forty Three Thousand Dollars ($8,143,000.00) into a qualified settlement fund ("QSF") account under Treasury Regulation 1.468B-1, to be established and administered by the Claims Administrator for the benefit of the Settlement Class, in accordance with 28 C.F.R. § 1.468B-1(c) ("Class Settlement Fund and Account" or "CSFA") to be allocated between them as follows: the County agrees to pay $65,000 as its full contribution to the Settlement Amount of $8,143,000.00; the City agrees to pay $8,078,000.00 as its full contribution to the Settlement Amount of $8,143,000.00.

Plaintiffs will accordingly request that this Court order or approve the creation of this trust fund, subject to the continuing jurisdiction of this Court, and established to resolve the claims in this action. The Settlement Amount shall be deposited into the CSFA and shall become subject to the distribution plan stated in the Settlement Agreement if it is approved by the Court.

### C. Proposed Payments

The Settlement Fund shall be disbursed in the following amounts:

1. A Class Fund of $5,029,500.00 will be distributed to all eligible members of the Settlement Class, at an estimated $10,500.00 per person award.

2. To all Class Representatives will be distributed an additional amount of $55,000.00, or a $5,000.00 per person service award.

3. A Conditions of Confinement Subclass Fund in the total amount of $600,000.00 shall be distributed to members of the Settlement Class who timely submit Declarations in Support of Inclusion in Conditions of Confinement Subclass. The maximum award for each member who timely submits a Declaration will be

$2,000.00, or, if more than 300 members of the Settlement Class timely submit Declarations, the total Conditions of Confinement Subclass Fund amount of $600,000.00 shall be divided evenly among all such members, resulting in a pro rata distribution.

4. A Secondary Claim Fund in the total amount of $300,000.00 shall be allocated among persons who timely submit valid Secondary Claim Forms with supporting evidence demonstrating Uncompensated Injury. Claims for Uncompensated Injury may include: severe physical or mental injuries, medical or mental health care expenses, lost earnings, lost or damaged personal property, loss of housing, attorney fees, and/or other uncompensated injury. Uncompensated Injury awards shall be determined by a Secondary Claim Reviewer to be appointed by the Court, who shall determine the amount, if any, of such awards based on criteria and through a process defined in the Settlement Agreement. Such awards will be called "Secondary Claim Payment Amounts," and shall be paid according to the terms of the Settlement Agreement. The Parties have agreed to ask the Court to appoint Magistrate Judge Stephanie Bowman to serve as the Secondary Claims Reviewer.[2]

5. The amount of $65,000.00 shall be paid to Rust Consulting, Inc., who shall serve as Claims Administrator, to cover costs of administration of the Settlement Agreement. Rust has provided a written proposal detailing costs and committing to provide the services required to administer the settlement. A copy of the Rust

---

[2] The Magistrate Judge expressed openness to the prospect of serving in this role during the mediation process and has since confirmed her willingness to serve in this role.

proposal is included with the Settlement Agreement (see Ex. 1) and attached thereto as Exhibit B. Any unspent funds from this retainer will be treated as unspent funds (below).

6.  The amount of approximately $5,000.00 shall be paid to Class Counsel as reimbursement of expenses advanced in the course of this litigation. Additional expenses incurred, anticipated to be minimal, may be submitted and drawn from the Reserve Fund (below).

7.  The amount of $2,035,750.00 constituting 25% of the total recovery, shall be paid to Class Counsel as fees for legal services in the preparation, filing, and prosecution of this lawsuit and negotiation and execution of the Settlement Agreement. Class Counsel will separately submit an unopposed motion for approval of attorney fees.

8.  The amount of $52,750.00 shall be held in reserve as the Reserve Fund to address any unforeseen expenses.

9.  The amount, if any, of unspent and/or unclaimed funds remaining in the CSFA on the Stale Date shall be disbursed as defined in the Settlement Agreement to the Residual Settlement Class (to include Settlement Class Members who meet the Settlement Class definition; received and negotiated any previous payment; and for whom the Claims Administrator has a valid address where a check can be delivered), or if the amount of unspent and/or unclaimed funds remaining in the CSFA is so low that, in light of postage and other administrative costs a redistribution is not feasible, then those funds shall be disbursed to a charitable organization to be named by agreement of the Parties.

### D. Proposed Process for Providing Notice to Settlement Class Members

The Settlement Agreement provides for the furnishing of notice to the Class in at least four formats:

First, a "Claim Package" will be mailed to every Settlement Class Member with a known address or contact information. The Claim Package shall consist of a Class Notice, a Designation of Award, a Declaration of Support of Inclusion in Conditions of Confinement Subclass Form with instructions, and a Secondary Claim Form with instructions.

Second, a Class Notice Summary will be published in *The Cincinnati Enquirer* and *The Cincinnati Herald* three times during a three-week period.

Third, a website will be established where Settlement Class Members can review the terms of the proposed Settlement Agreement, download a Claim Package, and submit questions about this lawsuit. The website will contain an e-mail address which shall be staffed by the Claims Administrator to respond to all questions and inquiries. Social media accounts will be established on Facebook, Instagram, and TikTok, which will provide information about the lawsuit and settlement, and which will provide reference to the Settlement Website and the Claims Administrator's e-mail address.

Fourth, a toll-free phone number will be established which will be available during the notice period which will provide recorded information about the settlement and will provide contact information for the Claims Administrator.

The Parties propose engaging an experienced professional claims administrator, Rust Consulting, Inc., to perform these functions and propose the following schedule to accomplish fair and expedient distribution of the Settlement Amount:

    a. Deadline for objections to this Plan: April 3, 2026
    b. Response of class counsel to any objections: April 30, 2026

c. <u>Fairness Hearing</u>: May 7, 2026 at 11:00 AM
d. <u>Adoption of this Plan</u>: May 7, 2026
e. <u>Establishment of the CSFA</u>: On or before June 20, 2026
f. <u>Distribution pursuant to the Plan</u>: Disbursement of attorney fees and costs within 15 days of the establishment of the CSFA; disbursement of Class Representative Awards within 30 days; disbursement of Claims Awards within 60 days; disbursement of Subclass Awards within 60 days and no later than 60 days from the Bar Date; disbursement of Secondary Claim Awards within 60 days and no later than 45 days after notice of disposition of Secondary Claims.
g. <u>Closing of the CSFA</u>: Within 45 days of the complete distribution of the CSFA including final distribution of pro rata payments to the Residual Settlement Class and *cy pres* distribution of any remainder, under the Settlement Agreement.

**E. Non-economic Relief**

In addition to funding the CSFA and disbursing the Settlement Amount as outlined above, the City has agreed to non-economic relief terms concerning policies and training concerning law enforcement practices in relation to protests.

As outlined in the Settlement Agreement at Section III, the City has agreed to implement updates to the Cincinnati Police Department's written policies and to train and/or retrain CPD officers on those updates and other relevant existing policies. The City also agreed to rescind all existing policies, procedures, and practices that are inconsistent with its policy and training updates or with current First Amendment or constitutional law.

**IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT**

**A. The legal standard for preliminary approval of a class action settlement**

"A Court reviewing settlements for approval first determines whether a settlement is reasonable before approving the settlement preliminarily, then requires notice to be sent to interested persons, and finally decides whether to finalize approval after a hearing has been conducted." *Hogan v. Cleveland Ave Rest. Inc*., 2019 U.S. Dist. LEXIS 212214, *12-13. *See also Swigart v. Fifth Third Bank*, 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *2

(S.D. Ohio July 11, 2014). "Although Rule 23(e) is silent as to the standard courts should apply to [ultimately] approve or disapprove a proposed settlement, the standard developed by the courts is to determine whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903-904 (S.D. Oh 2001), quoting *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). As long as the settlement agreement falls "within the range of possible approval," preliminary approval is appropriate. *Stanley v. Turner Oil & Gas Props.*, 2018 U.S. Dist. LEXIS 239761, *5.

A district court may base its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement. *In re Dun & Bradstreet Credit Svcs. Cust. Litigation*, 130 F.R.D. 366, 369 (S.D. Ohio 1990). The court should also determine that the settlement is neither illegal nor collusive. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). "The preliminary-approval inquiry the Court performs here "is not an onerous one and can often 'be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.'" *Stanley v. Turner Oil & Gas Props.*, S.D. Oh. No. 2:16-cv-386, 2018 U.S. Dist. LEXIS 239761, *2.

Upon consideration of these factors in this case, this Court should conclude that this settlement is fair, reasonable, and adequate.

**B. The proposed settlement meets the legal standard for preliminary approval.**

1. The putative class meets the requirements of Rule 23(a).

The Court should make an initial determination that the class as defined by the Parties in the Settlement Agreement meets all the requirements of Rule 23(a).

### a. *Numerosity*

The requirement for numerosity is met if the class is so numerous that joinder of all members would be impracticable. *See Swigard v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.W. Ohio 2012). In the Sixth Circuit, it has generally been accepted that a class size of 40 or more easily meets this requirement. *See e.g. Taylor v. CSX Transp., Inc*,. 264 F.R.D. 281, 288 (N.D. Ohio 2007). As set forth above and within the Settlement Agreement, the Parties have determined that the number of persons arrested for violation of the curfew or related offenses exceeds 400. Accordingly, this element is satisfied.

### b. *Commonality*

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)

In this case, there is commonality between the class members on numerous legal questions, including constitutionality of the at-issue curfew, manner and execution of its enforcement, and circumstances of the underlying arrests and prosecutions. Each of these presents a common core of legal questions upon which the ultimate litigation will be decided. Accordingly, the commonality element is satisfied.

### c. *Typicality*

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal quotations omitted). "A proposed class representative's claim is typical if it 'arises from the same

13

event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Id.* (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)).

Here, the claims of the Named Plaintiffs are entirely typical of those of the class. The Named Plaintiffs were all present during the protests at issue and subjected to arrest and prosecution as a result. In the hundreds of protest-related arrests and prosecutions here, the arrestees, including Named Plaintiffs, were all charged using complaints in identical form, with identical language describing the offense. No actual or potential conflicts have become apparent through the investigation and preliminary discovery in this case. Accordingly, typicality exists.

   d.   *Fair and Adequate Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement is accompanied by a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). "Put another way, we review the adequacy of class representation to determine whether class counsel is qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016). The Class Plaintiffs satisfy this requirement in both regards.

First, the interests of the Named Plaintiffs are entirely aligned with those of other persons who were arrested and subjected to the use of force during demonstrations and the curfew, and they seek the same relief that such unnamed persons could be entitled to recover.

14

<u>Second</u>, the Named Plaintiffs are represented herein by Class Counsel with abundant experience in civil rights, criminal defense, and class action litigation, including specifically as to similar protest litigation.

The law firm of Friedman Gilbert + Gerhardstein ("FG+G") has decades of experience litigating protest, police, and jail misconduct cases. FG+G counsel for Plaintiffs and Class have litigated, won at trial, and settled numerous police misconduct and jail conditions cases involving constitutional issues, including false arrests, malicious prosecutions, excessive force, and conditions of confinement, including multi-million-dollar settlements and significant reform commitments. *See*, e.g., *Bridgeman, et al. v. City of Cleveland, et al.*, N.D. Ohio, Consolidated Case Nos. 1:15-CV-01320 and 1:15-CV-00989 ($18.5 million settlement); *Smith v. Jones*, N.D. Ohio No. 1:13-CV-744 ($5.5 million jury verdict); *Estate of Isaiah Andrews v. City of Cleveland, et al.*, N.D. Ohio No. 1:22-cv-00250  ($7.9 million settlement); *Clay, et al., v. Cuyahoga County, Ohio, et al.* N.D. Ohio No. 1:18-cv-02929 (2024 settlement agreement resulting in extensive policy, practice, and training reforms for Cuyahoga County Jail concerning use of force, access to counsel, access to medical and mental health care, and more); Estate of Alexander Rios ($4 million pre-suit settlement with Richland County, Ohio in 2021); *Schwartz v. Clermont County, et al.*, S.D. Ohio No. 1:19-cv-453 ($750,000 settlement). FG+G counsel for Plaintiffs and Class herein litigated and settled numerous lawsuits on behalf of protesters whose constitutional rights were violated by the City of Cleveland, including cases concerning the same national protests in 2020 at issue in the instant case. *See* e.g., *Workman, et al. v. City of Cleveland, et al.*, N.D. Ohio No. 1:17-CV-01074 (2017 settlement for 2015 mass arrest of Black Lives Matter demonstrators); *Mollahassani v. City of Cleveland, et al.,* USDC N.D. Ohio No. 1:21-cv-00208 (2021 settlement for man unlawfully arrested and prosecuted for May 2020 curfew violations); *Belokon, et al. v.*

*City of Cleveland, et al.*, N.D. Ohio No. 1:21-cv-1104 (2021 settlement for group wrongfully arrested or harmed in during 2020 protests); *Bernard, et al. v. City of Cleveland, et al.,* N.D. Ohio No. 1:21-cv-1103 (same). FG+G counsel for Plaintiffs and Class herein also litigated and settled other cases concerning the 2020 George Floyd protests against other Ohio cities, *e.g., Pratt v. City of Toledo, et. al.,* N.D. Ohio No. 3:21-cv-1111 (partially resolved), as well as similar lawsuits involving more recent protests, *e.g., Harris v. City of Akron,* N.D. Ohio No. 5:23-cv-1290 (large group settlement for damages related to protestor arrests); *Akron Bail Fund v. City of Akron,* N.D. Ohio No. 5:23-cv-837 (settlement for injunctive relief including comprehensive police reforms).

The law firm of Santen and Hughes has extensive experience in class action litigation, representing both plaintiffs and defendants: *Pansiera v. The Home City Ice Company,* Case No. 1:19-cv-01042 (S.D. Ohio); *Uren v. Scoville*, Case No. A 1406892 (Ham. Cty. C.P.); *Khoo-Smith v. Nelson*, Case No. A 1601144 (Ham. Cty. C.P.); *Khoo-Robinson v. Willner*, Case No. A 1401348 (Ham. Cty. C.P.); *Asmus v. Winton Woods*, Case No. A1704933, (Ham. Cty. C.P.); *Thomas v. Papa John's International, Inc.*, Case No. 17-cv-411-MRB (S.D. Ohio). Santen & Hughes also has exhaustive experience in criminal defense, in cases ranging from misdemeanors to capital cases, in all phases of litigation from pretrial proceedings, plea negotiations, jury trials, bench trials, appeals and post-conviction. Santen & Hughes has also served as plaintiff's counsel in numerous civil right cases arising from police misconduct. *Vieh v. Smythe, et al.*, Case no. 1:13-cv-877 (S.D. Ohio); *Jordan v. City of Cincinnati*, Case no. 12-cv-884 (S.D. Ohio); *Hicks v. Scott*, Case no. 1:16-cv-621 (S.D. Ohio).

Finally, Class Counsel here have the unique additional benefit of having been engaged during the underlying criminal prosecutions and having obtained favorable results for the Named Plaintiffs and other class members in those proceedings.

2.  <u>Negotiations between the Parties have been at arm's length and in good faith.</u>

The negotiations that led to the proposed settlement have at all times been carried out by experienced counsel on both sides, each of whom sought to protect the interests of their respective clients. The initial round of settlement discussions took place through formal mediation with the participation of Magistrate Judge Stephanie Bowman and the negotiations required nearly two years of extensive communications and substantial disclosure of documents, data, and other information before reaching a successful resolution.

3.  <u>The proposed settlement is fair, adequate and reasonable under the circumstances.</u>

The Settlement Agreement presents a resolution that provides meaningful compensation for class members, while providing a comprehensive release from liability for the Defendants. In addition, the settlement will implement policy reforms agreed upon by the City for the improvement of law enforcement responses to protests and mass arrests in Cincinnati and Hamilton County.

For both sides, the proposed settlement foregoes the substantial costs of years of litigation that would be required in order to pursue the matter to judicial decision and avoids the risk of an adverse decision. For Plaintiffs and Defendants, the Parties are well served by concluding and carrying out the terms of the settlement rather than litigating the matter through dispositive motions and trial.

The schedule proposed by the Parties will provide ample opportunity for participation by any putative or dissenting class members who may seek to be heard by the Court. However, by the same token, the proposed schedule will allow the case to move toward resolution expeditiously whether the settlement is ultimately approved or rejected by the Court.

### C. The Court should preliminarily approve Rust Consulting, Inc. as the Claims Administrator.

The Plaintiffs proposed, and the Parties have agreed, to retain Rust Consulting, Inc. to serve as the Claims Administrator. Plaintiff's counsel conducted significant research and interviewed numerous candidates prior to selecting Rust as the preferred Claims Administrator.

Rust has 30+ years of class action settlement administration experience and has administered thousands of class action settlements, judgments, and similar administrative programs, including cases presenting claims and issues similar to those at issue here. Rust employs a permanent staff of more than 200. Exhibit B to the Settlement Agreement is a summary of qualifications of Rust Consulting which sets forth Rust's experience and services, together with its quote setting the cost of the services to be provided here.

The Claims Administrator will, as defined in the Settlement Agreement: (1) mail the Claim Package, in both English and Spanish, to Settlement Class Members; (2) establish a website where information about the Settlement will be available to Settlement Class Members; (3) publish the Class Notice summary; (4) respond to questions from Settlement Class Members; (5) review and assess the validity of Declarations in Support of Inclusion in Conditions of Confinement Subclass and Secondary Claim Forms submitted by Settlement Class Members; (6) calculate the payments to the individual Settlement Class Members consistent with the Agreement; (7) arrange for and distribute checks containing payments to Settlement Class Members; (8) arrange for disposition of any unclaimed funds as provided under the terms of the Settlement Agreement; (9) create a database of Settlement Class Members who have filed timely and valid Declarations in Support of Inclusion in Conditions of Confinement Subclass and/or Secondary Claim Forms; (10) create a database of Opt-Outs; and (11) perform any other duties necessary to fulfill the foregoing responsibilities and any other responsibilities set forth in the

Agreement. The costs of claims administration, including costs incurred prior to final approval, will be paid by the Defendants as provided under the Settlement Agreement.

Rust is abundantly well resourced and qualified to effectively manage administration of the proposed settlement, and the cost of its services is highly competitive.

### D. The Court should preliminarily approve the proposed process for notice to class members.

The Proposed Notice, attached as part of the Claim Package at Exhibit C to the Settlement Agreement, complies with due process and Federal Rule of Civil Procedure 23. The Class Notice that will be mailed to class members in two languages, and the Class Notice Summary that will be used in publishing notice also in two languages, contain all the information required by Rule 23(c)(2)(B). These describe the terms of the settlement, inform the class of the source and amounts of compensation to the Class Representatives and counsel, and provide specific information regarding the date, time, and place of the final approval hearing. In addition, the proposed process for notice includes establishing a website and social media accounts, where anyone can easily access the full settlement terms and entire Claim Package (together Exhibits C-F to the Settlement Agreement (Class Notice, Designation of Award, Declaration in Support of Inclusion in Conditions of Confinement Subclass, and Secondary Claim Form)). Settlement class members will be able to submit their Declarations in Support of Inclusion in Conditions of Confinement Subclass and/or Secondary Claim Forms for Uncompensated Injury in hard copy or electronically. Comprehensive information about the lawsuit and the settlement will be publicized through social media and potential class members will be able to make inquiries through email and will have access to information through a toll-free phone number.

The Parties have agreed to a clear and comprehensive plan to send out notice to all class members, provide time for inquiries and claim submission, allow objections and response to the same, and timely pay out all timely legitimate claims. Specifically, after preliminary approval by this Court, the Claim Package will be mailed directly to all Settlement Class Members at their last known addresses. Notice will then be published on at least three occasions over two weeks in two separate local newspapers. Any Settlement Class member will be notified of their right to opt out of the settlement and to make claims for Conditions of Confinement Subclass Awards and/or Uncompensated Injuries, and of the deadlines for doing so on a schedule proposed by the Parties and to be approved by the Court. The Settlement Agreement provides, and proposed Claims Administrator Rust has agreed to, specific steps to be taken to attempt to locate any Settlement Class Member whose address is not up to date. The proposed notices also provide detailed information about the manner in which any Settlement Class Member may submit their Declaration in Support of Inclusion in Condition of Confinement Subclass and/or document and submit their Secondary Claim for Uncompensated Injury in order to have it reviewed and decided by the Secondary Claims Reviewer.

As set forth above, the Parties propose that Plaintiffs shall submit their motion for final approval by April 30, 2026, and that the Fairness Hearing take place on May 7, 2026 at 11:00 A.M.

The process proposed by the Parties will provide for a fair opportunity for Settlement Class Members to obtain information, respond, and be heard.  The Court should approve the proposed process and notices.

## CONCLUSION

For the reasons set forth herein, the Parties jointly request that this Court preliminarily certify the Settlement Class, preliminarily approve the attached Settlement Agreement, approve the proposed Class Notice, preliminarily approve the appointment of Rust Consultants, Inc. as Claims Administrator, approve the proposed process for notice and administration, and set a schedule for distribution of notice, objections, and a final fairness hearing.

The Parties submit that the proposed settlement complies in all ways with Rule 23, and that the same is fair, reasonable, and will appropriately protect the interests of the putative class and all the Defendants. A proposed order is furnished herewith.

Respectfully submitted,

*/s/ J. Robert Linneman*
J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 East 7th Street, Ste. 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

*Counsel for Plaintiffs*

By: */s/ Emily Smart Woerner* (consent)
Emily Smart Woerner (0089349)
City Solicitor

Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
CITY OF CINCINNATI
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Emily.Woerner@cincinnati-oh.gov

Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov
*Counsel for City Defendants*

*/s/*
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: (513) 721-7300 / F: (513) 721-7008
krutowski@hllmlaw.com
*Counsel for City Police Officer Defendants
in their Individual Capacities*

CONNIE PILLICH
PROSECUTING ATTORNEY, HAMILTON COUNTY
By: */s/ Pamela J. Sears* (consent)
Pamela J. Sears (0012552)
Assistant Prosecuting Attorneys
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
(513) 946-3082 (Sears)
Pam.Sears@HCPros.org
Michael.Friedmann@HCPros.org
Kathleen.Fischer@HCPros.org
*Counsel for Hamilton County Defendants*

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2025 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)