**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MAURICE KENNEY,** et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>**CITY OF CINCINNATI,** et al.,<br><br>Defendants. | Case No. 1:22-CV-295<br><br>Judge Michael R. Barrett<br><br>Magistrate Judge Stephanie Bowman |

# CLASS ACTION SETTLEMENT AGREEMENT

This class action lawsuit settlement agreement is made and entered into as of this 14th day of November, 2025, by and among the following:

**The City Defendants or "City":** City of Cincinnati, Mayor John Cranley, City Manager Patrick Duhaney, Cincinnati Police Chief Eliot Isaac, PSK Kelley, Officer Mike Harper, Officer K. Best, PO Condon (P329), PO O'Brien, PO Davis (P44), PO B. Rock, PO K. Horning (P917), Officer Daniels (P16), PS B. Smith (P517), PO P. Herrman (P109), Officer White (P583), PO Holyfield (P159), Officer J. Greene (P35), PO R. Utecht (419), PO Johnson (P219), PO J. Mendoza (P395), PO Kelsey P425, and Officers John Doe 1 Through 1000;

**The County Defendants or "County":** Hamilton County, Ohio, the Hamilton County Board of Commissioners, Hamilton County Sheriff Jim Neil, and Officers John Roe 1 Through 450;

**The Plaintiffs:** Maurice Kenney, Quinn Moore, Wilder Zeiser (FKA Mary Zeiser), Paula Bennett, Arianna Hicks, Andrew Amrein, Suann Lockard, Kimberly Calloway, Zoe Keller, William Todd Butler as the administrator of the Estate of Chase Butler, and Oxana Prokhorova as the administrator of the Estate of Paulina Prokhorova, individually, and on behalf of all others similarly situated.

All together, the "Parties."

**WHEREAS**, the underlying Civil Action followed a swell of protests in May and June of 2020 across the country and in the City of Cincinnati, in Hamilton County, Ohio, after the murder of George Floyd in Minneapolis;

**WHEREAS**, City of Cincinnati and Hamilton County leadership were confronted at the time with State of Ohio directives relating to the COVID-19 pandemic and community safety concerns;

**WHEREAS**, the City of Cincinnati imposed curfews in response to the protests;

**WHEREAS**, as a result of the City of Cincinnati's enactment of curfews, hundreds of protesters and others were arrested and criminally charged by the City of Cincinnati Police Department, and some of those arrested persons were held in custody in buses and/or in the sallyport prior to in processing into the Hamilton County Justice Center;

**WHEREAS**, Plaintiffs, on behalf of themselves and all others similarly situated ("the Settlement Class" comprised of "Class Members" or "Settlement Class Members"), commenced this action, captioned *Kenney, et al. v. City of Cincinnati, et al.,* Case Number 1:22-cv-295, in the United States District Court for the Southern District of Ohio, alleging, pursuant to 42 U.S.C. §1983, violations of their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution (the "Civil Action");

**WHEREAS**, the Parties, without conceding any infirmity in their claims or defenses, have engaged in settlement negotiations regarding the claims raised in this Civil Action;

**WHEREAS**, counsel for all Parties have thoroughly investigated the Settlement Class Members' claims against the City Defendants and County Defendants and have undertaken extensive analysis of the legal principles applicable to the claims and defenses asserted by the Parties;

**WHEREAS,** the Parties now desire to resolve the issues raised in this Civil Action without further proceedings and without admitting any infirmity, fault, or liability;

**WHEREAS**, the terms of this Settlement Agreement (the "Settlement Agreement" or "Agreement") were extensively and vigorously negotiated in good faith over more than a year, including multiple sessions of facilitated mediation;

**WHEREAS**, the Parties believe it is desirable that the Plaintiffs' claims herein (the "Released Claims") be fully and finally compromised, settled, resolved with, and barred pursuant to the terms and conditions set forth in this Agreement;

**WHEREAS**, the negotiations have resulted in this Settlement Agreement, which, subject to the approval of the Court, settles this Civil Action in the manner and upon the terms set forth below; and

**WHEREAS**, the signatories represent that they are fully authorized to enter into this Settlement Agreement and to bind the Parties to the terms and conditions stated herein, subject to Court approval;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the Parties, by and through their respective counsel, that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, or as otherwise ordered by the Court, and in consideration of the benefits flowing to the Parties from the Settlement Agreement set forth herein, the Released Claims shall be fully and finally compromised, settled, and released, and the Released Claims shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 5
II. DEFINITIONS ..... 5
III. POLICY AND TRAINING REVISIONS ..... 13
IV. SUMMARY OF PROCEDURE FOR PRELIMINARY APPROVAL, NOTICE TO CLASS, FINAL APPROVAL, AND DISBURSEMENT ..... 13
V. CLASS DEFINITIONS ..... 14
VI. JOINT MOTION FOR PRELIMINARY APPROVAL ..... 17
VII. NOTICE TO CLASS AFTER PRELIMINARY APPROVAL AND CLAIMS ADMINISTRATOR DUTIES ..... 17
VIII. PLAINTIFFS' ATTORNEY FEES, COSTS, AND EXPENSES ..... 23
IX. FINAL APPROVAL OF SETTLEMENT, ADMINISTRATION OF SETTLEMENT FUNDS, AND DISBURSEMENTS OF ATTORNEY FEES AND EXPENSES, CLASS REPRESENTATIVE AWARDS, AND CLAIMS AWARDS ..... 23
X. ADMINISTRATION AND DISBURSEMENT OF CONDITIONS OF CONFINEMENT SUBCLASS AWARDS ..... 25
XI. RESOLUTION OF SECONDARY CLAIMS FOR UNCOMPENSATED INJURY AND ADMINISTRATION OF THE SECONDARY CLAIM FUND ..... 28
XII. DISBURSEMENT OF SECONDARY CLAIM FUND ..... 30
XIII. RESIDUAL PAYMENTS/CY PRES ..... 30
XIV. CONFIDENTIALITY ..... 32
XV. EXCLUSION FROM THE SETTLEMENT (OPT-OUT) ..... 33
XVI. RELEASES ..... 34
XVII. DISMISSAL OF CLAIMS ..... 36
XVIII. NOTIFICATION ..... 36
XIX. MUTUAL FULL COOPERATION ..... 37
XX. EFFECT OF THE SETTLEMENT AGREEMENT ON THE PENDING CIVIL ACTION AND CONTINUING JURISDICTION ..... 37
XXI. MODIFICATION OF THE SETTLEMENT AGREEMENT AND ORDER ..... 38
XXII. COUNTERPARTS ..... 38
XXIII. GOVERNING LAW ..... 39
XXIV. MUTUAL INTERPRETATION ..... 39
XXV. BINDING UPON SUCCESSORS ..... 39
XXVI. NULLIFICATION ..... 39

## I. INTRODUCTION

1. The terms of this Settlement Agreement, as defined below, provide a substantial benefit to the Settlement Class. The Parties consider this Settlement Agreement to be fair, reasonable, and adequate.

2. For the purposes of effecting a settlement and release as described in this Settlement Agreement, the City and County jointly shall pay the total amount of Eight Million One Hundred Forty Three Thousand Dollars ($8,143,000.00) ("Settlement Amount") to be allocated between them as follows: the County agrees to pay $65,000.00 as its full contribution to the Settlement Amount of $8,143,000.00; the City agrees to pay $8,078,000.00 as its full contribution to the Settlement Amount of $8,143,000.00. The Parties agree that the full Settlement Amount will be allocated in the manner provided in this Agreement. The City agrees that it shall undertake Policy Revisions described in this Settlement Agreement. The Parties agree that the payment of the settlement amount and the City's implementation of the Policy Revisions described herein will constitute full and final settlement of all claims or potential claims that were brought or could have been brought in this Civil Action against all Defendants named in the Complaint.

3. This Settlement Agreement does not and shall not be deemed to constitute an admission by Defendants as to the validity or accuracy of any of the allegations, assertions, or claims made by Plaintiffs. This Settlement Agreement does not constitute an admission, adjudication, or finding on the merits of this Civil Action.

## II. DEFINITIONS

The terms described below shall have the meanings defined in this Section wherever used in this Settlement Agreement, and for the purposes of this Settlement Agreement only.

4. "Administrative Expense Payment" means a preliminary and partial payment made by Defendants after preliminary approval by the Court which shall be used to pay the Claims

Administrator for the work described in this Agreement. The Administrative Expense Payment may become partially refundable should this Settlement Agreement not receive final approval from the Court. In that event, the Administrator shall keep billing records and refund the unused portion to Defendants.

5. "Bar Date" is the date established by the Court by which any Settlement Class Member must submit a Declaration in Support of Inclusion in Conditions of Confinement Subclass and/or a Secondary Claim Form as provided in Sections X, XI, and XII.

6. "City" means the City of Cincinnati.

7. "City Defendants" means the City of Cincinnati, Mayor John Cranley, City Manager Patrick Duhaney, Cincinnati Police Chief Eliot Isaac, PSK Kelley, Officer Mike Harper, Officer K. Best, PO Condon (P329), PO O'Brien, PO Davis (P44), PO B. Rock, PO K. Horning (P917), Officer Daniels (P16), PS B. Smith (P517), PO P. Herrman (P109), Officer White (P583), PO Holyfield (P159), Officer J. Greene (P35), PO R. Utecht (419), PO Johnson (P219), PO J. Mendoza (P395), PO Kelsey P425, and Officers John Doe 1 Through 1000;

8. "Civil Action" means the above-captioned litigation before the Honorable Michael R. Barrett in the United States District Court for the Southern District of Ohio.

9. "Claim Package" means the Class Notice, a Designation of Award, a Declaration in Support of Inclusion in Conditions of Confinement Subclass Form, and Secondary Claim Form.

10. "Claims Administrator" means the person or organization designated by Class Counsel and appointed by the Court to administer the class and whose duties are defined in this Agreement.

11. "Claims Award" means the base amount to be paid to each Settlement Class Member as defined in Sections V and IX of this Agreement.

12. "Class Counsel" means Friedman Gilbert + Gerhardstein and Santen & Hughes.

13. "Class Fund" means the amount to be allocated from the Settlement Amount for payment of Claims Awards to Settlement Class Members, excluding Conditions of Confinement Subclass Awards and Secondary Claim Payment Amounts.

14. "Class Notice" means the long-form class notice to be mailed to Settlement Class Members.

15. "Class Notice Summary" means the short-form class notice to be published as described herein in Section VII.

16. "Class Representatives" means Maurice Kenney, Quinn Moore, Wilder Zeiser (FNU Mary Zeiser), Paula Bennett, Arianna Hicks, Andrew Amrein, Suann Lockard, Kimberly Calloway, Zoe Keller, William Todd Butler as the administrator of the Estate of Chase Butler, and Oxana Prokhorova as the administrator of the Estate of Paulina Prokhorova.

17. "Class Representative Awards" means the awards to Plaintiffs for the services they have provided to the Class.

18. "Class Representative Award Fund" means the amount to be allocated from the Settlement Amount for payment of "Class Representative Awards."

19. "Class Settlement Fund Account" ("CSFA") means a qualified settlement fund (QSF) account under Treasury Regulation 1.468B-1 to be established by the Administrator for the benefit of the Settlement Class.

20. "Conditions of Confinement Subclass" means Settlement Class Members who are eligible for payment under the Class Definition set forth in Section V, and who are not excluded from the Class as set forth in Sections V or XV, and who were detained for a period of more than five (5) hours in association with their arrests.

21. “Conditions of Confinement Subclass Award” means the amount paid from the Conditions of Confinement Subclass Fund to members of the Conditions of Confinement Subclass, and which is separate from the Class Award, which will be paid to each Settlement Class Member, and separate from any Secondary Claim Payment Amount awarded to any Settlement Class Member.

22. “Conditions of Confinement Subclass Fund” means the amount to be allocated from the Settlement Amount for payment of Conditions of Confinement Subclass Awards.

23. “Counsel for the City Defendants” or “City Defendants’ Counsel” means the City of Cincinnati Solicitor and Law Department.

24. “CPD” means the Cincinnati Police Department.

25. “Counsel for the County Defendants” or “County Defendants’ Counsel” means the Hamilton County Prosecutor’s office.

26. “County Defendants” means Hamilton County, Ohio, the Hamilton County Board of Commissioners, Hamilton County Sheriff Jim Neil, and Officers John Roe 1 Through 450.

27. “Court” means the United States District Court for the Southern District of Ohio.

28. “Defendants” means the City Defendants and the County Defendants collectively.

29. “Final Approval Order” means an order entered by the Court, after a Fairness Hearing, granting final approval to this Settlement Agreement, approving Class Counsel’s fees and costs, approving Class Representative Service Award, and dismissing the Civil Action with prejudice, unless the Court orders otherwise.

30. “Final Approval Date” means the date of entry by the Court of the Final Approval Order.

31. “HCJC” means Hamilton County Justice Center.

32. "HCSO" means Hamilton County Sheriff's Office.

33. "Opt-Out" means any Settlement Class Member who submits a timely request to be excluded from this Settlement as described in the Class Notice and Summary Class Notice and in Section XV of this Agreement.

34. "Parties" means Plaintiffs and Defendants as described in Sections I and II.

35. "Plaintiffs" means Maurice Kenney, Quinn Moore, Wilder Zeiser (FNU Mary Zeiser), Paula Bennett, Arianna Hicks, Andrew Amrein, Suann Lockard, Kimberly Calloway, Zoe Keller, William Todd Butler as the administrator of the Estate of Chase Butler, and Oxana Prokhorova as the administrator of the Estate of Paulina Prokhorova, individually and on behalf of all others similarly situated.

36. "Plan of Allocation" means the proposed distribution of funds as set forth in Sections VIII through XIII of this Agreement.

37. "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order by the Court.

38. "Preliminary Approval Order" means the order entered by the Court preliminarily approving this Settlement Agreement, scheduling a Fairness Hearing, appointing the Claims Administrator, appointing class counsel, and approving a plan of notice and claims administration.

39. "Proof of Injury" means evidence that may be submitted with Secondary Claim Forms, which may be submitted, without limitation, in the following formats: declarations, affidavits, video recordings, audio recordings, photographs, public records, court records, medical records, business records, financial records, or social media records.

40. "Policy Revisions" mean non-economic terms agreed to by the City and as described in Section III of this Agreement.

41. "Released Parties" means any and all Defendants and any of their parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privies and insurers who are released under the terms of this Agreement.

42. "Released Claims" means any and all claims for physical injury, emotional distress, loss of liberty, excessive detention, and/or any other damages including, but not limited to, damages arising from claims of violation of the First Amendment, First Amendment retaliation, unlawful search or seizure, false arrest, excessive force, malicious prosecution, delayed or excessive detention, conditions of confinement, violation of due process, violation of equal protection and selective enforcement, supervisory liability, municipal liability, 42 U.S.C. § 1983, and any other applicable federal, state, or local laws or constitutional provisions or rights that were or could have been asserted by the Class Representatives and/or any Settlement Class Member against the Released Parties based upon or arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in this Civil Action. This Release does not include or cover any actions or omissions occurring after the Preliminary Approval Date.

43. "Residual Settlement Class" means the members of the Settlement Class who are eligible to receive payments of residual amounts left undistributed under this Settlement Agreement, if any exist, as provided in Section XIII of this Agreement.

44. "Reserve Fund" means the portion of the Settlement Amount held in reserve to address unforeseen expenses arising in the execution of the terms of this Settlement Agreement if such expenses occur.

45. “Secondary Claim Process” means the process defined in Sections XI and XII of this Agreement through which Settlement Class Members may seek an award from the Secondary Claim Fund for compensation for Uncompensated Injury, in addition to the Class Award to which they claim to be entitled.

46. “Secondary Claim Reviewer” means the person designated by Class Counsel and appointed by the Court to adjudicate the Secondary Claim Process and whose duties are defined in Sections XI and XII of this Agreement.

47. “Secondary Claim Payment Amount” means an award to be paid from the Secondary Claim Fund to Settlement Class Members who submit timely and valid Secondary Claim Forms for Uncompensated Injury as determined by the Secondary Claim Reviewer, and which is separate from the Class Award, which will be paid to each Settlement Class Member, and separate from any Conditions of Confinement Subclass Award paid to any Settlement Class Member, as explained in Sections XI and XII of this Agreement.

48. “Secondary Claim Form” means the form that persons must complete and timely submit with Proof of Injury in order to make a claim for a Secondary Claim Payment Amount.

49. “Secondary Claim Fund” means the amount to be allocated from the Settlement Amount for payment of Conditions of Confinement Subclass awards and/or timely and valid Secondary Claims for Uncompensated Injury by Settlement Class Members.

50. “Settlement Amount” means the money paid by the City and County for full settlement of Plaintiffs’ claims, in the total amount of Eight Million One Hundred Forty Three Thousand Dollars ($8,143,000.00), as defined in paragraph 2 above.

51. "Settlement Class Members" means individuals who satisfy the Class Definition in Section V of this Agreement who do not file a valid and timely Request for Exclusion as provided in Section XV.

52. "Stale Date" means the date after which the Claims Administrator may issue checks for Unspent Funds Payments to Settlement Class Members if certain conditions exist. The Stale Date will occur 91 days after the Claim Administrator's issuance of the latest disbursement of any check for Attorney Fees and Costs, Claims Awards and, if applicable, Class Representative Awards, Conditions of Confinement Subclass Awards, and/or Secondary Claim Payment Amounts.

53. "Uncompensated Injury" means an injury including severe physical or mental injuries, medical or mental health care expenses, lost earnings, lost or damaged personal property, loss of housing, attorney fees, and/or other uncompensated injury, for which a Settlement Class Member may submit a Secondary Claim Form to request Uncompensated Injury Payment, as described Sections XI and XII of this Agreement.

54. "Uncompensated Injury Payment" means the amount determined by the Secondary Claims Reviewer for payment of a Secondary Claim, separate from the Class Award and Conditions of Confinement Subclass Award.

55. "Unspent Funds Payment" means the checks issued to Settlement Class Members to redistribute unspent funds and/or unclaimed awards after the State Date, so long as the amount of unspent funds and/or unclaimed awards remaining in the CSFA is sufficiently large to make a redistribution feasible given postage and other costs.

## III. POLICY AND TRAINING REVISIONS

56. The City agrees to make effective its Policy Revisions attached as Exhibit G simultaneously with the class certification, notice, and claims processes, and distribution of awards described below. The Parties incorporate those Exhibits by reference here.

57. The City agrees to rescind all existing policies, procedures, and practices that are inconsistent with the above-described Policy Revisions or with current First Amendment or constitutional law.

58. The City agrees to make effective its Policy Revisions attached as Exhibit G within 100 days of the Court's approval of this settlement agreement.

59. Upon the Court's approval of this Settlement Agreement, the City agrees that its Policy Revisions shall be incorporated into the City's officer and leadership training curricula.

## IV. SUMMARY OF PROCEDURE FOR PRELIMINARY APPROVAL, NOTICE TO CLASS, FINAL APPROVAL, AND DISBURSEMENT

60. The Parties agree that upon execution of this Agreement, they shall submit to the Court a Joint Motion for Preliminary Approval of the settlement on the terms set forth in this Agreement.

61. In the Joint Motion for Preliminary Approval, the Parties shall seek the appointment by the Court of Rust Consulting, Inc., to serve as Claims Administrator and to perform the tasks associated with administration of the Settlement as set forth in this Agreement.

62. Upon Preliminary approval by the Court, the Claims Administrator shall provide notice to Settlement Class Members as provided herein, including notice of deadlines to object and/or opt out, in advance of a Final Fairness Hearing.

63. The Parties shall appear at a Final Fairness Hearing, at which time they shall jointly seek final approval of the terms of this Agreement, the Claims Process, all disbursements as set forth in this Agreement, and the attorney fees and expenses to be paid to Class Counsel.

64. Upon final approval of this Settlement by the Court, the Civil Action shall be dismissed, the releases provided in this Agreement shall become effective, and payments shall be made as provided herein.

## V. CLASS DEFINITIONS

65. The "Settlement Class" means all persons whose names are set forth in Exhibit A.[1]

66. Excluded from the Settlement Class are:

(a) Persons who executed a release or waiver of claims in favor of the City of Cincinnati in connection with a plea agreement disposing of any criminal charges that arose between May 30, 2020 and June 8, 2020;

(b) Persons who were charged with any accompanying felony, or offense of violence or property damage, or who were alleged to have committed any such actions in connection with a criminal charge between May 30, 2020 and June 8, 2020;

(c) Persons not listed in Exhibit A who brought claims against the City of Cincinnati alleging constitutional rights violations relating to their arrest, detention, and/or prosecution in association with their presence in the area of a protest between May 30, 2020 and June 8, 2020 except for Kathleen Berberich;

(d) Persons not listed in Exhibit A who could have brought claims against the City of Cincinnati alleging constitutional rights violations relating to their arrest, detention, and/or prosecution in association with their

[1] Exhibit A includes redactions in order to avoid disclosure of the names of putative class members whose cases may have been sealed or expunged. Defendants' execution of this Agreement shall not be construed as a disclosure of any criminal proceeding that is not presently a matter of public record. Provided however, that Plaintiffs may separately submit to the Court, subject to a Motion to Seal, a complete list of class members which shall include such putative plaintiffs, to which Defendants shall not object.

The term "person" as used to refer to class members shall include the estate of any person who meets the definition but who has died in the interim period.

presence in the area of a protest between May 30, 2020 and June 8, 2020 but did not do so;

(e) Defendants;

(f) Members of Cincinnati City Council and any members of the immediate family or business associates of the same;

(g) The Judge and Magistrate Judge to whom this case is assigned and any members of the immediate family of the same; and

(h) All persons who may submit timely and proper requests for exclusion from the Class.

67. The "Conditions of Confinement Subclass" means Settlement Class Members who are eligible for payment under the Class Definition set forth in Section V, and who are not excluded from the Class as set forth in Sections V or XV, and who were detained for a period of more than five (5) hours in association with their arrests.

68. The Settlement Amount of $8,143,000.00 shall be allocated as follows:

a. **A Class Fund** in the total amount of $5,029,500.00 shall be divided equally among all members of the Settlement Class for payment of Claims Awards;

b. **A Conditions of Confinement Subclass Fund** in the total amount of $600,000.00 shall be distributed to members of the Settlement Class who timely submit complete Declarations in Support of Inclusion in Conditions of Confinement Subclass as described in Section X of this Agreement. The maximum award for each member who timely submits a Declaration will be $2000.00, or, if more than 300 members of the Settlement Class timely submit Declarations, the total Conditions of Confinement Subclass Fund amount of $600,000.00 shall be divided evenly among all such members, resulting in a pro rata distribution.

c. **A Secondary Claim Fund** in the total amount of $300,000.00 shall be allocated among persons who timely submit valid Secondary Claim Forms for Uncompensated Injury and as determined by the Secondary Claim Reviewer through the process as described in Sections XI and XII of this Agreement.

d. **Class Representative Awards.** The total amount of $55,000.00 shall be allocated as Class Representative Awards. The Class Representatives shall be paid $5,000.00 each for the services that they have provided to the Class. These service awards shall be in addition to all amounts otherwise due to these Plaintiffs with respect to their individual claims as Settlement Class Members.

e. **Attorney Fees and Expenses** shall be paid as provided below. Attorney fees are in the amount of $2,035,750.00. Expenses are estimated in the amount of $5,000.00.

f. **Administrative Expense Payment.** The amount of $65,000.00 shall be allocated toward administration of this Settlement Agreement.

g. **Reserve Fund**: The amount of $52,750.00 shall be held in reserve to address any unforeseen expenses, and if not so used shall be distributed as provided herein.

h. An **Unspent Funds Payment** of all residual or unallocated funds remaining in the CSFA after payment of the above shall be paid equally to all members of the Residual Settlement Class, subject to the terms of this Agreement. All unspent funds in any of the above categories shall be disbursed in this payment as set forth in this Agreement.

69. Rights and claims hereunder shall survive the death of Settlement Class Members. If a Settlement Class Member who is eligible to receive monetary relief under this Settlement Agreement is deceased, the amount payable to such deceased eligible Settlement Class

Member shall be paid to the appropriate representative of his/her estate. The representative of the estate shall provide proof of death and appropriate documentation to the Claims Administrator to show that they are properly a representative of the estate. Without limitation, an order of a probate court having jurisdiction appointing a person as administrator or fiduciary of the estate of a deceased Settlement Class Member shall be sufficient to establish the right of an estate to receive monetary relief under this Settlement Agreement. Any and all costs associated with allowing monetary relief to be paid to the Settlement Class Member's estate, in excess of the relief and administration costs applicable to living class members, shall be borne by the Class Member's estate, the representative of the estate, or fiduciary of the estate. If no claim is submitted on behalf of the deceased person's estate to permit such payment, the deceased person's award(s) shall be treated as if unclaimed and revert into unspent funds.

70. All awards to Settlement Class Members pursuant to this Settlement Agreement are intended to and have been calculated in order to compensate them for personal physical injury under Internal Revenue Code Section 104 (a)(2).

## VI. JOINT MOTION FOR PRELIMINARY APPROVAL

71. The Parties agree to the certification of a class pursuant to Rule 23(c) and Rule 23(e) of the Federal Rules of Civil Procedure.

72. The Parties will submit a joint motion to the Court seeking preliminary approval and certification of the Class.

73. In the Motion for Preliminary Approval, the Parties shall seek the appointment of Rust Consulting, Inc., as the Claims Administrator.

## VII. NOTICE TO CLASS AFTER PRELIMINARY APPROVAL AND CLAIMS ADMINISTRATOR DUTIES

74. If the Court grants preliminary approval of the proposed Settlement, the Parties shall take such steps as may be necessary to provide notice as required by law, schedule a final fairness hearing, and obtain final approval of the Court in order to conclude the settlement.

75. Class Counsel shall engage the Claims Administrator to provide notice and administer the disbursements as set forth in this Agreement.

76. No later than 15 days after the Preliminary Approval Order, the City and County shall deliver to the Claims Administrator payment totaling $65,000.00 which shall be payable to Rust Consulting, Inc. ("Administrative Expense Payment").

77. The Administrative Expense Payment shall be used to pay for services and expenses as set forth in the Description of Services furnished by the Claims Administrator, which is attached hereto as Exhibit B ("Administrator's Services")

78. If this Settlement is not ultimately approved by the Court, then any portion of the Administrative Expense Payment for services not performed or expenses not incurred shall be returned to Defendants upon notice of the Court's rejection.

79. As set forth in the Administrator's Services, Notice of this Settlement shall be provided to Settlement Class Members by the Claims Administrator by mailing the Claim Package containing a Notice of Settlement, attached hereto as Exhibit C, a Designation of Award, attached as Exhibit D, a Declaration in Support of Inclusion in Conditions of Confinement Subclass, attached as Exhibit E, and the Secondary Claim Form for Uncompensated Injury, attached as Exhibit F (collectively "Claim Package"). As reflected in the Claim Package, these forms contain information about the Class Award, Conditions of Confinement Subclass Award, and any Uncompensated Injury Award. The Claim Package shall be mailed to all persons identified on Exhibit A.

80. As set forth in the Administrator's Services, the Claims Administrator shall cause to be published a Class Notice Summary. Such Class Notice Summary shall be published in the Cincinnati Enquirer and the Cincinnati Herald, three times within the same two-week period, or as otherwise ordered by the Court.

81. The Claims Administrator shall also publish a Website containing the Class Notice Summary in English and Spanish and all information and documents contained in the Claim Package.

82. The website will contain an email address which shall be staffed by the Claims Administrator to respond to all questions and inquiries.

83. The Claims Administrator shall provide a toll free phone number which shall be available during the notice period which will provide recorded information about the settlement, and will provide the website and contact information for the Claims Administrator.

84. As set forth in the Administrator's Services, the Claims Administrator will publish social media posts on Facebook, Instagram, and TikTok, containing information about this lawsuit and settlement, and where anyone can view the Class Notice Summary and all information and documents contained in the Claim Package. The social media accounts will contain a link to the Website and vice versa.

85. The City and County agree to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator information and data which are relevant and appropriate to facilitate the administration of this Settlement Agreement, to the extent such information is disclosable to the Administrator under federal, state and/or local laws and/or pursuant to the process described herein for transmission and use of confidential information in the administration of this Settlement Agreement.

86. For any Claim Package that is returned with a forwarding address, the Claims Administrator will update the Settlement Class Member address and re-mail the Claim Package to the forwarding address within 21 days of receiving the returned envelope.

87. For any Settlement Class Member whose mailing address or name as shown on Exhibit A is not correct, the Claims Administrator shall have authority to update the mailing address and/or legal name upon satisfactory verification of their identity and/or as stated in Section IX of this Agreement.

88. In the event that a Claim Package is returned because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender", the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will update the Settlement Class Member's address and re-send the Claim Package within 21 days of receiving the newly ascertained address. If no updated address is obtained for that Settlement Class Member, the Claim Package shall be sent again to the Settlement Class Member's last known address.

89. If the Claims Administrator is able to obtain an e-mail address or phone number but no mailing address for any Settlement Class Member, it may send an electronic copy of the Claim Package according to the same terms and timeline set forth herein. The Claims Administrator will create and maintain a schedule of all Settlement Class Members for whom Claim Packages are sent electronically, and the electronic method, e-mail or SMS, by which the Claim Packages are sent.

90. Should the Claims Administrator be unable to locate a Settlement Class Member after a standard skip trace search, the Claims Administrator will create and maintain a schedule of all Settlement Class Members for whom contact information is unknown or unavailable.

91. At least 21 days prior to the Final Fairness Hearing, the Claims Administrator shall provide to all Parties a list of Settlement Class Members for whom Claim Packages were returned as undeliverable and for whom efforts to obtain an alternative address failed.

92. At least one week before the Fairness Hearing, Class Counsel shall file with the Court a declaration confirming that Notice was provided consistent with the Settlement Agreement and any Preliminary Approval Order entered by the Court, and the Claims Administrator's list of Settlement Class Members for whom Claim Packages were returned as undeliverable and for whom efforts to deliver the Claim Package via an alternative electronic delivery method failed.

93. The Defendants shall serve notice of the Settlement Agreement that meets the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715 ("CAFA") on any appropriate federal and state officials no later than ten days after filing of the motion seeking approval of this Settlement Agreement with the Court. Defendants shall certify to the Court that they have complied with CAFA. Defendants shall promptly provide Class Counsel with any substantive responses received in response to any CAFA notice.

94. The Claims Administrator shall be responsible for receiving and maintaining Declarations in Support of Inclusion in Conditions of Confinement Subclass submitted by any Settlement Class Member.

95. Declarations in Support of Inclusion in Conditions of Confinement Subclass that are submitted by the Bar Date or any court-mandated extension thereto shall be accepted by the Claims Administrator.

96. For all Declarations in Support of Inclusion in Conditions of Confinement Subclass timely submitted, the Claims Administrator shall determine whether the Declaration is complete to accept such Declarations.

97. A Declaration in Support of Inclusion in Conditions of Confinement Subclass is deemed submitted upon deposit in a prepaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, when submitted for delivery by a commercial express carrier, when submitted to the Claims Administrator via electronic means, or when actually received by the Administrator, whichever date is earlier.

98. The Claims Administrator shall reject Declarations in Support of Inclusion in Conditions of Confinement Subclass that are untimely submitted past the Bar Date or any court-mandated extension thereto, and shall notify the Settlement Class Member of their untimely submission of a Declaration in Support of Inclusion in Conditions of Confinement Subclass by mail or email within 21 days of receipt of the submission. The Claims Administrator shall retain copies of all Declarations in Support of Inclusion in Conditions of Confinement Subclass that are untimely submitted.

99. The Claims Administrator shall maintain an updated database of all timely submitted, complete Declarations in Support of Inclusion in Conditions of Confinement Subclass.

100. The Claims Administrator shall also be responsible for receiving and maintaining Secondary Claim Forms submitted by any Settlement Class Member.

101. Secondary Claim Forms that are submitted by the Bar Date or any court-mandated extension thereto shall be accepted by the Claims Administrator. The Claims Administrator shall have no responsibility or authority to make any determination as to completeness, merit, or any other matter in order to accept such Forms.

102. A Secondary Claim Form is deemed submitted upon deposit in a prepaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, when submitted for delivery by a commercial express carrier, when submitted to the Claims Administrator via electronic means, or when actually received by the Administrator, whichever date is earlier.

103. The Claims Administrator shall reject Secondary Claim Forms that are untimely submitted past the Bar Date or any court-mandated extension thereto. The Claims Administrator shall retain copies of all Secondary Claim Forms that are rejected as untimely submitted

104. The Claims Administrator will transmit all timely submitted Secondary Claim Forms for Uncompensated Injury, including any supporting materials, to the Secondary Claim Reviewer (as defined below) no later than 14 days after the passage of the Bar Date or any court-mandated extension thereto.

## VIII. PLAINTIFFS' ATTORNEY FEES, COSTS, AND EXPENSES

105. As part of the Plan of Allocation, the City and County agree to the payment of reasonable attorney fees to Class Counsel, which the Parties agree shall be twenty five percent (25%) of the total Settlement Amount totaling $2,035,750.00, plus all court costs and expenses accrued by Class Counsel in association with this Civil Action to date, estimated at $5,000.00.

106. The amount of attorney fees and expenses shall be subject to approval by the Court. Plaintiffs shall file a motion seeking Court approval for payment of attorney fees and costs in the amounts set forth above, and Defendants agree not to oppose the same.

## IX. FINAL APPROVAL OF SETTLEMENT, ADMINISTRATION OF SETTLEMENT FUNDS, AND DISBURSEMENTS OF ATTORNEY FEES AND EXPENSES, CLASS REPRESENTATIVE AWARDS, AND CLAIMS AWARDS

107. If the Court grants final approval, the parties shall proceed to execute the Plan of Allocation as described in this Agreement in Sections VIII through XIII.

108. As set forth above, within 15 days of the Preliminary Approval Order, the City and County shall make payment from the Settlement Amount of 8,143,000.00 to which both have contributed to the Claims Administrator in the amount of $65,000.00 for the Administrative Expense Payment such that the Administrator can begin work.

109. Within 45 days of the Final Approval Date, the City and County shall make payment to the Claims Administrator for the remainder of the Settlement Amount—($8,143,000.00 to which both have contributed less the Administrative Expense Payment of $65,000.00, or $8,078,000.00.) The Claims Administrator shall deposit and maintain the Settlement Amount in the "Class Settlement Fund Account" ("CSFA").

110. The Settlement Amount shall be maintained in separate funds within the CSFA as follows:

a. Class Fund: $5,029,500.00

b. Conditions of Confinement Subclass Fund: $600,000.00

c. Secondary Claim Fund: $300,000.00

d. Class Representative Award Fund: $55,000.00

e. Attorney Fees, Costs, and Expenses Fund: $2,035,750.00 plus expenses estimated at $5,000.00.

f. Reserve Fund: $52,750.00

111. The Settlement Amount shall be disbursed by the Claims Administrator as provided in this Agreement.

112. Within 15 days after the Court grants Class Counsel's motion for attorney fees and expenses, the Claims Administrator shall disburse from the Attorney Fees, Costs, and Expenses Fund the amount of fees and expenses awarded by the Court to Friedman Gilbert + Gerhardstein, LLC and Santen & Hughes, LPA.

113. Within 30 days of receipt of the Settlement Amount, the Claims Administrator shall disburse the Class Representative Awards to the Class Representatives.

114. Within 60 days of receipt of the Settlement Amount, the Claims Administrator shall issue payment of Claims Awards to all Settlement Class Members.

115. The Claims Administrator shall have the authority to issue checks to any eligible Settlement Class Member who has a different legal name but the same personal identifying information as listed in Exhibit A where sufficient proof of identity is provided.

116. The absence of a social security number shall not be a basis for withholding payment to an otherwise eligible Settlement Class Member of any award pursuant to this Settlement Agreement if the Claims Administrator can otherwise confirm the identity of that individual through sufficient identification documentation.

117. The Claims Administrator shall maintain the Conditions of Confinement Subclass Fund, the Secondary Claim Fund, and the Reserve Fund subject to the processes provided below.

## X. ADMINISTRATION AND DISBURSEMENT OF CONDITIONS OF CONFINEMENT SUBCLASS AWARDS

118. The Conditions of Confinement Subclass Fund shall be administered and disbursed by the Claims Administrator as follows.

119. Settlement Class Members who were detained for a period of more than five (5) hours in association with their arrests may opt to complete and submit Declarations in Support of Inclusion in Conditions of Confinement Subclass to the Claims Administrator.

120. Such Declarations shall be considered timely submitted if they are postmarked or electronically submitted to the Claims Administrator on or before the Bar Date or any court-mandated extension thereto.

121. Such Declarations shall be deemed complete only when information is provided for at least the following fields of the Declaration at the time of submission: Name, Address, Signature, and Date. The Declarations additionally list fields for Email and Phone but shall not be rejected on the basis that either or both of those fields is incomplete.

122. The Claims Administrator shall determine whether each Declaration in Support of Inclusion in Conditions of Confinement Subclass was timely submitted, and whether the Declaration is complete.

123. All decisions of the Claims Administrator as to the timeliness and completeness of such Declarations shall be conclusive and final.

124. A Declaration in Support of Inclusion in Conditions of Confinement Subclass is deemed submitted upon deposit in a prepaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, when submitted for delivery by a commercial express carrier, when submitted to the Claims Administrator via electronic means, or when actually received by the Administrator, whichever date is earlier.

125. The Claims Administrator shall reject Declarations in Support of Inclusion in Conditions of Confinement Subclass that are untimely submitted past the Bar Date or any court-mandated extension thereto and shall notify the Settlement Class Member of their untimely

submission of a Declaration in Support of Inclusion in Conditions of Confinement Subclass by mail or email within 21 days of receipt of the submission. The Claims Administrator shall retain copies of all Declarations in Support of Inclusion in Conditions of Confinement Subclass that are untimely submitted.

126. The Claims Administrator shall maintain an updated list of all Conditions of Confinement Subclass Members, comprised of Settlement Class Members who timely submit complete Declarations in Support of Inclusion in Conditions of Confinement Subclass.

127. Settlement Class Members who submit timely, complete Declarations are entitled to Conditions of Confinement Subclass Awards. The maximum Conditions of Confinement Subclass Award amount shall be $2,000.00, or, if more than 300 members of the Settlement Class timely submit complete Declarations, the total Conditions of Confinement Subclass Fund of $600,000.00 shall be divided evenly among all such members, resulting in a pro rata distribution.

128. Within 40 days of the Bar Date or any court-mandated extension thereto, whichever comes later, the Claims Administrator shall transmit its updated list of Conditions of Confinement Subclass Members to Class Counsel and Defendants' Counsel. Class Counsel shall file this list with the Court within 14 days of receipt.

129. Within 60 days of the Bar Date or any court-mandated extension thereto, whichever comes later, the Claims Administrator shall issue payment for all Conditions of Confinement Subclass Awards to eligible Settlement Class Members from the Conditions of Confinement Subclass Fund.

130. Inclusion in the Conditions of Confinement Subclass and/or payment of a Conditions of Confinement Subclass Award to any Settlement Class Member shall not affect the

amount of or eligibility for any other payment to the Settlement Class Member pursuant to other payment provisions in this Agreement.

131. Any amount of the Conditions of Confinement Subclass Fund that is not allocated to Conditions of Confinement Subclass Members shall be disposed of as provided in Section XIII of this Agreement.

## XI. RESOLUTION OF SECONDARY CLAIMS FOR UNCOMPENSATED INJURY AND ADMINISTRATION OF THE SECONDARY CLAIM FUND

132. The Secondary Claim Fund shall be administered and disbursed as follows.

133. Secondary Claim Forms may be submitted by Settlement Class Members who contend that they experienced, in connection with their arrest, any of the following Uncompensated Injuries: severe physical or mental injuries; medical or mental health care expenses; lost earnings; lost or damaged personal property; loss of housing; attorney fees; and/or other uncompensated injury.

134. Within 14 days of the Bar Date or any court-mandated extension thereto, whichever is later, the Claims Administrator shall supply each timely submitted Secondary Claim Form and all related evidence to the Secondary Claim Reviewer, who is responsible for determinations as to whether a Secondary Claim shall result in a Secondary Claim Award, and in what amount, if applicable. The Secondary Claims Reviewer shall consider and decide these Secondary Claims as provided below.

135. In the Joint Motion, the Parties shall request that the Court appoint Magistrate Judge Stephanie K. Bowman as the Secondary Claims Reviewer. The Parties' agreement to the appointment of Magistrate Judge Bowman as Secondary Claims Reviewer is subject to the presumption that the Magistrate Judge has agreed to review Secondary Claims at no cost the Parties.

136. Upon receipt by the Secondary Claims Reviewer of the timely submitted Secondary Claim Forms for Uncompensated Injury claim types, the Secondary Claims Reviewer will review each Secondary Claim Form and all of its supporting evidence, and determine:

a. Whether the Settlement Class Member has established Uncompensated Injury as set forth in this Settlement Agreement; and if so,

b. Whether the claimed Uncompensated Injury is supported by the evidence; and if so,

c. What portion of the Secondary Claim Fund shall be paid to the Settlement Class Member.

137. In rendering decisions on Secondary Claims for Uncompensated Injury, the Secondary Claims Reviewer shall have no obligation to publish findings of fact, conclusions of law, or to furnish any written decision except providing notice to the Administrator as described below.

138. The total amount of awards to be paid as directed by the Secondary Claims Reviewer must not exceed the amount of the Secondary Claim Fund. The Secondary Claims Reviewer shall have no obligation to make awards for the entirety of the amount held in the Secondary Claim Fund.

139. If the Secondary Claim Fund is insufficient to satisfy all awards decided by the Secondary Claim Reviewer, then claims shall be allocated pro rata, in proportion to the amount of claims awarded by the Secondary Claims Reviewer.

140. All decisions of the Secondary Claims Reviewer shall be conclusive and final, and are not subject to any objection or appeal.

141. The Secondary Claims Reviewer shall transmit notice of her decision(s), including the amounts of any awards, together in writing to the Claims Administrator, Class Counsel, and Defendants' Counsel once all claims are disposed.

## XII. DISBURSEMENT OF SECONDARY CLAIM FUND

142. Within 45 days of receipt by the Claims Administrator of notice from the Secondary Claims Reviewer disposing of all Secondary Claims, the Claims Administrator shall issue payment for Secondary Claim Awards as directed by the Secondary Claims Reviewer. If the amount of payments directed by the Secondary Claims Reviewer exceeds the amount of the Secondary Claim Fund, then partial payment shall be made pro rata, in proportion to the amount of claims awarded by the Secondary Claims Reviewer.

143. Secondary Claims Awards shall not affect the amount of or eligibility for any other payment to any Settlement Class Member pursuant to other payment provisions in this Agreement.

144. Any amount of the Secondary Claim Fund left unallocated by the Secondary Claims Reviewer shall be disposed of as provided in Section XIII of this Agreement.

## XIII. RESIDUAL PAYMENTS/CY PRES

145. The Claims Administrator shall disburse any unspent, unallocated, and/or unclaimed funds remaining in the CSFA on the Stale Date. as provided in this Section.

146. Any check that is returned as undeliverable to a Settlement Class Member will be treated as unclaimed and remain in the fund from which it was issued to be disposed of according to the terms of this Section of the Agreement.

147. The Claims Administrator shall stop payment on any checks mailed that are not negotiated within 90 days of issuance. Notice of this time limit shall be provided on each check issued in payment under any provision of this Agreement. Checks for which payment was stopped under this paragraph will be treated as unclaimed and remain in the fund from which they were issued to be disposed of according to the terms of this Section of the Agreement.

148. On the date occurring 91 days after the issuance of the latest disbursement made under this Agreement, the Stale Date shall occur.

149. Within 30 days of the Stale Date, the Claims Administrator shall make a written accounting to Class Counsel and Defendants' Counsel of all funds which were unclaimed as set forth above, and all other funds remaining in the Secondary Claim Fund, the Reserve Fund, and any other fund created and/or money still left over as part of this Settlement ("Stale Date Accounting"). The Stale Date Accounting shall also identify all Settlement Class Members for whom any disbursement check was not delivered or deliverable. As part of the State Date Accounting, the Administrator will provide a list of the members of the "Residual Settlement Class." The Residual Settlement Class shall be comprised of all persons who meet the Settlement Class Definition, and received and negotiated any previous payment pursuant to this Agreement; and for whom the Claims Administrator has a valid address where a check can be delivered.

150. Within 30 days of the Stale Date Accounting, the Claims Administrator shall issue pro rata payments of the entirety of any funds then remaining in the CSFA, in equal amounts, to the members of the Residual Settlement Class.

151. Provided however, that the Claims Administrator may deduct from the remaining balance the costs and expenses of such a disbursement if the Administrative Expense Payment has by then been exhausted.

152. Further provided, that if the balance of the funds then remaining in the CSFA on the State Date is sufficiently low that it is not feasible to make a redistribution in light of the cost of postage and other costs, then no further payment shall be issued to the Settlement Class or Residual Settlement Class, and instead any remaining fund shall be paid (net of any outstanding

fees, costs, or expenses claimed by the Claims Administrator) to a charitable organization designated by Class Counsel.

153. In the event that unforeseen expenses of administration of this Agreement arise, Class Counsel shall be authorized to make use of the Reserve Fund to cover such expenses. In that event, Class Counsel shall give notice to Defendants' Counsel and shall file on the docket a disclosure of such additional expenses and a revised agreement from the Claims Administrator to provide the additional services. Defendants' Counsel shall have the opportunity to object within 14 days from the date of filing. Absent such an objection, or upon notice that there is no objection, Class Counsel may proceed. Notwithstanding anything else in this Section, no portion of the Reserve Fund may be paid directly to Class Counsel except upon separate approval by the Court.

## XIV. CONFIDENTIALITY

154. Class member personal identifying information and financial information as part of the Claims Process described in this Settlement Agreement shall be confidential and may not be disclosed to anyone except Class Counsel, Defendants' Counsel, Claims Administrator, Secondary Claim Reviewer, or if necessary, the Court under seal. Class Counsel, Defendants' Counsel, Claims Administrator, and Secondary Claim Reviewer shall not disclose confidential information to any person not a member of their staff and only when necessary to facilitate the terms and conditions of this Settlement Agreement.

155. To facilitate the release of personal identifying information of the Settlement Class Members within the Parties' possession and not disclosable to the Class Administrator or Secondary Claims Reviewer under federal, state and/or local laws, the Claims Administrator and Secondary Claims Reviewer shall sign a Non-Disclosure Agreement approved by the Parties. To the extent Class Counsel, Defense Counsel, the Claims Administrator, or Secondary Claim Reviewer seeks to disclose this information to any other person or entity, they must first seek all

Counsel's consent in writing. In addition, after consent is given, but before disclosing the confidential information to anyone else, including, any agent, contractor, or expert, they shall first have such person or organization read and sign the agreed-upon Non-Disclosure Agreement. A signed copy of that Non-Disclosure Agreement shall be provided to all counsel no later than two business days after execution. Counsel and Administrators shall take all reasonable steps to ensure that the confidential information concerning all proposed Settlement Class Members and eligible Settlement Class Members remain private and confidential. In addition, the information provided to Counsel and Administrators regarding actual and potential Settlement Class Members will not be used for any other purpose other than in this Civil Action and for the administration of this Settlement Agreement.

156. The confidentiality provisions in this Settlement Agreement are directed to protecting the personal identifying and financial information of the Settlement Class Members and facilitating the Claims Process. These provisions should not be construed to render any terms of the Agreement nor papers filed in this Court confidential as these are a public record.

## XV. EXCLUSION FROM THE SETTLEMENT (OPT-OUT)

157. Any Settlement Class Member who wishes to be excluded from the Settlement must by the Bar Date submit to the Claims Administrator a written request to opt out of the settlement as described in the Class Notice.

158. Any Settlement Class Member who has affirmatively opted out of the settlement cannot at a later date seek payment under this Settlement.

159. Originals of all Opt Out requests shall be retained by the Claims Administrator until such originals are filed with the Court.

160. All of the Class Representatives agree that they will not request exclusion from this Settlement.

161. The Claims Administrator shall deliver to Class Counsel and Defendants' Counsel a list of all Opt Outs, as well as copies of the opt out requests received by the Claims Administrator.

162. Any Settlement Class Member who is not excluded from the Settlement shall conclusively be deemed to be bound by this Settlement Agreement and by all subsequent proceedings, orders, and judgments herein.

## XVI. RELEASES

163. Upon delivery of the Settlement Amount and the City's implementation of its Policy Revisions, and in consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all claims in this Civil Action will be dismissed, with prejudice, and without costs, expenses, or fees in excess of the amounts authorized by this Settlement Agreement and the Court.

164. In addition, all Class Representatives and Settlement Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge any and all of the defendants as well as their past or present affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, insurers and any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, successors in interest or assigns of the Defendants, from each and every Released Claim, and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties.

165. Provided however that the releases set forth in this agreement shall not be applicable to any Settlement Class Member who opts out of the Settlement pursuant to Section XV.

166. Every Settlement Class Member, except for those who opt out of the Settlement pursuant to Section XV shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them. No Settlement Class Member who is excluded or opts out shall share in any monetary benefits provided by this Settlement Agreement.

167. The Parties and Settlement Class Members acknowledge that the covenants and promises made by the City, County, and Defendants herein constitute adequate consideration in exchange for the Released Claims.

168. The Parties agree that this Settlement Agreement shall be construed most liberally and broadly to fully release, acquit, and discharge forever the Released Parties released under this Agreement.

169. Nothing in this Settlement Agreement shall be construed to bar any claims of Class Representatives or Settlement Class Members based on or arising out of events occurring after the date of the Final Approval Order or arising out of events separate from those described in the Civil Action.

170. The Parties hereby agree not to appeal any aspect of this Settlement Agreement, or to otherwise collaterally attack or challenge this Settlement Agreement, except any award of attorneys' fees.

171. Nothing in this Settlement Agreement shall affect claims accruing after the effective date of this Agreement.

## XVII. DISMISSAL OF CLAIMS

172. The dismissal of the Civil Action constitutes dismissal of any and all of the claims and rights of action arising out of the facts and circumstances that are the subject of this Civil Action, and that were asserted or could have been asserted by or on behalf of Plaintiffs against Defendants or Defendants' successors and assigns or any present or former employees and agents, are hereby dismissed and discontinued and withdrawn, with prejudice, and without disbursements, fees, or costs to any Plaintiff, Settlement Class Member, or Class Counsel in excess of the amount authorized by the Court or agreed upon by the Parties as stated in this Settlement Agreement.

173. The dismissal of the Civil Action, pursuant to Rule 41(a)(1)(A)(ii), also disposes of any and all injunctive/declaratory relief claims arising out of the events alleged in the Complaint and Amended Complaint in this Civil Action, and that were asserted or could have been asserted by or on behalf of Plaintiffs against Defendants or Defendants' successors and assigns or any present or former employees and agents, are hereby dismissed and discontinued and withdrawn, with prejudice, and without disbursements, fees, or costs to any Plaintiff, Settlement Class Member, or Class Counsel in excess of the amount authorized by the Court or agreed upon by the Parties as stated in this Settlement Agreement.

## XVIII. NOTIFICATION

174. If a Party to this Settlement Agreement is required to give notice under this Settlement Agreement, notice should be sent via e-mail as follows:

To Plaintiffs:

| | | |
|---|---|---|
| FG+G<br>jacqueline@FGGfirm.com<br>elizabeth@FGGfirm.com | and | Santen & Hughes<br>jrl@SantenHughes.com<br>bpo@SantenHughes.com |

To City Defendants:

Cincinnati City Solicitor
Emily Smart Woerner – emily.woerner@cincinnati-oh.gov

To County Defendants:

Hamilton County Prosecutor's Office
Pamela J. Sears - pam.sears@hcpros.org
Steve Simon - steve.simon@hcpros.org

## XIX. MUTUAL FULL COOPERATION

175. The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Settlement Agreement and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.

## XX. EFFECT OF THE SETTLEMENT AGREEMENT ON THE PENDING CIVIL ACTION AND CONTINUING JURISDICTION

176. The Court, by its approval of this Agreement and Order entering the same, shall retain jurisdiction for the implementation and enforcement of the terms of this Settlement Agreement, and the Parties and their Counsel shall submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

177. Plaintiffs will take all necessary and appropriate steps to obtain approval of this Settlement Agreement and dismissal of this Civil Action with prejudice.

178. If the Court approves this Settlement Agreement, and if there is an appeal from such decision by a third party, Defendants will join Plaintiffs in defense of the Settlement Agreement.

179. On the Final Approval Date, or a later date as determined by the Court, the Court will dismiss the above-captioned action, with prejudice and without costs, expenses, or fees in

excess of the amount authorized by the Court or agreed upon by the Parties. The Court's order dismissing this Civil Action will state that the dismissal is made pursuant to this Settlement Agreement, and that the Parties are authorized to seek enforcement of this Settlement Agreement in the trial court.

180. The terms of this Settlement Agreement shall be a full, final, and complete resolution of this Civil Action.

## XXI. MODIFICATION OF THE SETTLEMENT AGREEMENT AND ORDER

181. This Settlement Agreement represents the entire agreement among the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein, or to determine the meaning of any provisions herein. This Settlement Agreement can be modified only on the written consent of all counsel for the Parties.

182. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

## XXII. COUNTERPARTS

183. This Settlement Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument, and will be binding when it has been executed and delivered by the last signatory. A facsimile, photograph, or scanned signature is an original signature for purposes of this Settlement Agreement.

## XXIII. GOVERNING LAW

184. This Settlement Agreement shall be governed by and construed and interpreted according to the laws of the State of Ohio without reference to conflicts of law principles.

## XXIV. MUTUAL INTERPRETATION

185. The Parties stipulate that this Settlement Agreement was negotiated at arm's length between parties of equal bargaining power, to resolve a bona fide dispute between the Parties concerning liability and the availability of equitable relief and damages, and Class Counsel and Defendants' Counsel jointly drafted this Settlement Agreement. Accordingly, this Settlement Agreement shall not be construed in favor of or against any of the Parties.

186. No Party shall be considered the drafter of this Settlement Agreement for purposes of interpreting the Settlement Agreement, or the application of any rule of construction.

187. Any dispute regarding interpretation of this Settlement Agreement, including but not limited to any Settlement Class Member's eligibility for a Claims Award, may be submitted to the Court for determination, consistent with the Parties' agreement on issues to present to the Court.

## XXV. BINDING UPON SUCCESSORS

188. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, administrators, heirs, successors, and assigns.

## XXVI. NULLIFICATION

189. This Settlement Agreement shall become null and void in the event that any of the following do not occur:

(a) Preliminary Approval of this Settlement Agreement by the Court;
(b) Final Approval by the Court; or
(c) Approval of Plaintiffs' attorney fees, costs, and expenses

[THE REST OF THIS PAGE LEFT BLANK INTENTIONALLY]

Dated: December 4, 2025 in Cincinnati, Ohio

**Counsel for Plaintiffs:**

/s/
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

/s/
J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

**Counsel for City Defendants:**

/s/
Emily Smart Woerner (0089349)
City Solicitor
Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov

**Counsel for City Police Officer Defendants in their Individual Capacities:**

/s/
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: 513-721-7300 / F: 513-721-7008
krutowski@hllmlaw.com

**Counsel for Hamilton County Defendants:**

CONNIE PILLICH
Prosecuting Attorney, Hamilton County, Ohio
By: /s/
Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
T: (513) 946-3000 / F: (513) 946-3018
Pam.Sears@HCPros.org

Dated: December 4, 2025 in Cincinnati, Ohio

**Counsel for Plaintiffs:**

/s/
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

**Counsel for City Defendants:**

/s/
Emily Smart Woerner (0089349)
City Solicitor
)
Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov

**Counsel for City Police Officer Defendants in their Individual Capacities:**

/s/
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: 513-721-7300 / F: 513-721-7008
krutowski@hllmlaw.com

**Counsel for Hamilton County Defendants:**

CONNIE PILLICH
Prosecuting Attorney, Hamilton County, Ohio
By: */s/Pamela J. Sears*
Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
T: (513) 946-3000 / F: (513) 946-3018
Pam.Sears@HCPros.org

Dated: December 4, 2025 in Cincinnati, Ohio

**Counsel for Plaintiffs:**

/s/
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

/s/
J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

**Counsel for City Defendants:**

Emily Smart Woerner (0089349)
City Solicitor
Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov

Have seen and approve:

Sheryl M.M. Long
City Manager,
Cincinnati, Ohio

**Counsel for City Police Officer Defendants in their Individual Capacities:**

/s/
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: 513-721-7300 / F: 513-721-7008
krutowski@hllmlaw.com

**Counsel for Hamilton County Defendants:**

CONNIE PILLICH
Prosecuting Attorney, Hamilton County, Ohio
By: /s/Pamela J. Sears
Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
T: (513) 946-3000 / F: (513) 946-3018
Pam.Sears@HCPros.org

Dated: December 4, 2025 in Cincinnati, Ohio

**Counsel for Plaintiffs:**

*/s/*
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

*/s/*
J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

**Counsel for City Defendants:**

*/s/*
Emily Smart Woerner (0089349)
City Solicitor
Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov

**Counsel for City Police Officer Defendants in their Individual Capacities:**

*/s/*
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: 513-721-7300 / F: 513-721-7008
krutowski@hllmlaw.com

**Counsel for Hamilton County Defendants:**

CONNIE PILLICH
Prosecuting Attorney, Hamilton County, Ohio
*/s/Pamela J. Sears*
Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
T: (513) 946-3000 / F: (513) 946-3018
Pam.Sears@HCPros.org

Have seen and approve:

Jeffrey W. Aluotto
County Administrator
Hamilton County, Ohio

Dated: December 4, 2025 in Cincinnati, Ohio

**Counsel for Plaintiffs:**

/s/
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, Ohio 45202
T: (513) 572-4200 / F: (216) 621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square Suite 1900
Cleveland, OH 44113
sarah@FGGfirm.com
elizabeth@FGGfirm.com

/s/
J. Robert Linneman (0073846)
Brian P. O'Connor (0086646)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
T: (513) 721-4450 / F: (513) 852-5994
jrl@santenhughes.com
bpo@santenhughes.com
hls@santenhughes.com

**Counsel for City Defendants:**

______________________________
Emily Smart Woerner (0089349)
City Solicitor
Katherine C. Baron (0092447)
Matt Slovin (0102029)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
T: (513) 352-3326 / F: (513) 352-1515
Katherine.Baron@cincinnati-oh.gov
Matt.Slovin@cincinnati-oh.gov

Have seen and approve:

________________________
Sheryl M.M. Long
City Manager,
Cincinnati, Ohio

**Counsel for City Police Officer Defendants in their Individual Capacities:**

/s/ HAVE SEEN
Kimberly A. Rutowski (0076653)
LAZARUS LAW, LLC
525 Vine St., Suite 2210
Cincinnati, OH 45202-4322
T: 513-721-7300 / F: 513-721-7008
krutowski@hllmlaw.com

**Counsel for Hamilton County Defendants:**

CONNIE PILLICH
Prosecuting Attorney, Hamilton County, Ohio
By: /s/Pamela J. Sears________________
Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2151
T: (513) 946-3000 / F: (513) 946-3018
Pam.Sears@HCPros.org